IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN KENJI LE BROCQ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:16-CV-2832-D |
| | § | |
| NEJLA K. LANE, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Defendants move to dismiss this action for lack of personal jurisdiction, improper venue, and failure to state a claim, or, alternatively, to dismiss or transfer the case under the first-to-file rule. Defendants also move for sanctions. Finding a likelihood of substantial overlap between the present case and an earlier-filed case in the Northern District of Illinois, the court grants the alternative motion to transfer and transfers this action to the Northern District of Illinois, Eastern Division, pursuant to the first-to-file rule. The court denies defendants' motions to dismiss and for sanctions.

I

Plaintiff Stephen Kenji Le Brocq, Esquire ("Le Brocq") worked with defendant Nejla K. Lane, Esquire ("Lane") at defendant Lane Legal Services, P.C. (the "Lane Firm") for two years, starting as a law clerk and eventually working as a junior partner until his departure. During that time, all parties maintained their principal places of business or domicile in Cook County, Illinois. While still at the Lane Firm in 2015, Le Brocq received a form 1099-MISC

for fiscal year 2014. That form reflected compensation in the amount of $58,998.00, and Le Brocq used the form to file his federal income tax return with the Internal Revenue Service ("IRS") before the April 2015 filing deadline. Le Brocq then abruptly left the Lane Firm in May 2015.

Following Le Brocq's departure, Lane and the Lane Firm filed suit against him in the Northern District of Illinois ("Illinois Action"). The Illinois Action arose out of disputed circumstances preceding, surrounding, and following Le Brocq's departure. Lane and the Lane Firm asserted state and federal statutory claims[1] as well as Illinois common law causes of action, including civil conversion, fraud in the inducement, breach of fiduciary duty, breach of contract, unjust enrichment, promissory estoppel, and tortious interference with a contract. Le Brocq filed an answer in the Illinois Action that included defenses and counterclaims for common law fraud, intentional infliction of emotional distress, defamation, several breach of contract counts, and violations of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1-15.

Sometime between Le Brocq's departure and service of process in the Illinois Action in August 2015, Le Brocq moved to North Texas, where he obtained Texas driver and law licenses.[2] On September 14, 2015, before Le Brocq filed an answer in the pending Illinois

[1] The statutory causes of action include alleged violations of the United States Stored Communications Act, 18 U.S.C. § 2701, the Electronic Communications Privacy Act, 18 U.S.C. § 2510, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and the Illinois Trade Secrets Act, 765 ILCS 1065/1.

[2] Defendants allege that Le Brocq moved to Texas to "avoid process of service in the IL-Federal Action in the Northern District of Illinois." Ds. Mot. to Dismiss Br. 3, 6.

Action, defendants mailed a second, "corrected" fiscal year 2014 form 1099-MISC to Le Brocq at a North Texas address. The second form reflected compensation of $84,640.00. Due to the $25,642.00 difference between the first 1099-MISC, on which Le Brocq filed his tax return, and the second1099-MISC, the IRS issued Le Brocq a "Notice of Deficiency Increase in Tax." The IRS stated that a payment of $9,523.00 was required to cover the tax deficiency. The IRS also levied a $1,905.00 substantial tax understatement penalty against Le Brocq. Le Brocq now faces litigation in the United States Tax Court in Washington, D.C. to challenge the accuracy of the latter 1099-MISC.

Le Brocq filed the present action in the Northern District of Texas ("Texas Action") in October 2016, alleging that defendants fraudulently altered his compensation on the "corrected" 1099 form to harass and harm him. He alleges that, in doing so, defendants committed tax fraud, in violation of 26 U.S.C. § 7434.[3] Defendants maintain, however, that the second form 1099 merely corrected the first, adding "compensation" of several unauthorized wire transactions allegedly completed by Le Brocq. Defendants also move to dismiss for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), to dismiss for improper venue, pursuant to Rule 12(b)(3), to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), and to dismiss on compulsory counterclaim grounds, pursuant to Rule

---

Because the court does not reach jurisdiction or the merits, it need not consider or address the alleged motivations behind Le Brocq's change in residence.

[3]"If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

13(a).[4] Alternatively, defendants move to dismiss, stay, or transfer this case to the same venue as the Illinois Action. Defendants also move for sanctions pursuant to Rule 11 as part of their motion to dismiss, but not in a separate motion.

II

The court turns initially to the question whether the first-to-file rule applies.

A

The Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed. *See Ameritox, Ltd. v. Aegis Scis. Corp.*, 2009 WL 305874, at *3 (N.D. Tex. Feb. 9, 2009) (Fitzwater, C.J.) (citing *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997)). Under the "first-to-file rule," when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap. *See Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999) (citing *Save Power*, 121 F.3d at 950). The rule rests on principles of comity and sound judicial administration. *See In re Amerijet Int'l, Inc.*, 785 F.3d 967, 976 (5th Cir. 2015) (per curiam) (citing *Cadle*, 174 F.3d at 603). The concerns underlying the rule "manifestly [are] to avoid the waste of

[4]It is unclear whether defendants are moving on both failure to state a claim and counterclaim grounds or just the latter. *See* Ds. Mot. to Dismiss Br. 7-8. Regardless, any decision to grant a Rule 12(b)(6), a Rule 13(a), or neither motion lies with the first-filed transferee court. *See Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999).

duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *W. Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985).

The first-to-file rule not only determines which court may decide the merits of substantially similar issues but also establishes which court may decide whether the second suit must be dismissed, stayed, or transferred and consolidated. *See Cadle*, 174 F.3d at 606. Accordingly, the second-filed court limits its analysis to whether there is a likelihood of substantial overlap between the two cases, and, if so, whether to dismiss, stay, or transfer the second case. *See Universal Prot. Servs. v. Thornburg*, 2016 WL 4523905, at *2 (N.D. Tex. Aug. 22, 2016) (Robinson, J.). In sum, absent "compelling circumstances," the court that initially obtains the controversy should decide how or whether to try substantially similar issues. *See Goldstein v. Dickinson*, 1999 WL 47240, at *2 (N.D. Tex. Jan. 21, 1999) (Fitzwater, J.).

To determine whether the issues substantially overlap, the court examines whether core issues are the same or if much of the proof adduced would likely be identical. *See Int'l Fid. Ins. Co. v. Sweet Little Mex. Corp.*, 665 F.3d 671, 677 (5th Cir. 2011) (quoting *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971)). Although the cases must be "more than merely related," the issues presented and identity of parties in the two cases need not be identical. *See Buckalew v. Celanese, Ltd.*, 2005 WL 2266619, at *2 (S.D. Tex. Sept. 16, 2005). If overlap is less than complete, the court may consider "the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in

resolving the dispute." *Save Power,* 121 F.3d at 951 (citation omitted). Even when the second case presents claims absent in the first, the cases may still substantially overlap. *See Your Preferred Printer, LLC v. United Wholesale, LLC*, 2012 WL 3016771, at *4 (E.D. La. July 23, 2012). In fact, corresponding threshold issues may be sufficient to raise the possibility of substantial overlap. *See Am. Home Mortg. Servicing, Inc. v. Triad Guar. Ins. Corp.*, 714 F.Supp.2d 648, 650-51 (N.D. Tex. 2010) (Lynn, J.).

If the second-filed court finds likely substantially overlap, "the proper course of action is for the court to transfer the case to the first-filed court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed." *Wells Fargo Bank, N.A. v. W. Coast Life Ins. Co.*, 631 F.Supp.2d 844, 847 (N.D. Tex. 2009) (Lynn, J.) (citing *Cadle*, 174 F.3d at 606). The second-filed court transfers, rather than dismisses, so the first-filed court may decide whether to dismiss, stay, transfer, or consolidate the cases. *See, e.g.*, *Thornburg*, 2016 WL 4523905, at *3.

B

Because defendants invoke the first-to-file rule, the court determines initially whether there is a likelihood of substantial overlap between the Texas and Illinois Actions. To support a finding of overlap, defendants point to their allegation in the Illinois Action that "Le Brocq made illicit electronic transfers from [the Lane Firm's] Chase Bank business and payroll accounts to himself via an internal wire transfer." Ds. Mot. to Dismiss App. 12. According to defendants, this alleged misappropriation is the predicate for several of their Illinois Action claims, including breach of contract, breach of fiduciary duty, civil

conversion, and unjust enrichment. Defendants also maintain that the Illinois pleadings directly address the second 1099 form.[5] Defendants also point to several of Le Brocq's Illinois counterclaims that focus on an alleged employment contract and related wage issues.

Le Brocq responds that the first-to-file rule does not apply. He posits that the Illinois and Texas cases cannot substantially overlap because his tax fraud claim stems from conduct that occurred after he relocated to Dallas, while the Illinois Action stems from conduct that occurred while the parties worked together in Chicago.

The court concludes the Texas Action likely substantially overlaps with the Illinois Action. If this court were to rule on the tax fraud claim in the Texas Action, it would determine whether Le Brocq made unauthorized electronic transfers, as defendants allege. It would consider whether the transfers constitute taxable "compensation" that should be reflected on a form 1099. The court would also examine accuracy and intent behind the second 1099 form that defendants sent to Le Brocq's Texas address. Therefore, threshold issues in the tax fraud claim may include questions that bear on whether the second form 1099 accurately reflected Le Brocq's compensation. *See* 26 U.S.C. § 7434(a).

Likewise, to settle issues already being litigated in the Illinois Action, the Illinois court may examine whether Le Brocq in fact made "illicit electronic transfers . . . to himself." Ds. Mot. to Dismiss App. 12. In the Illinois Action, defendants repeatedly allege in their

[5]Paragraph 83 of defendant's Illinois Action complaint states that defendants "provided Le Brocq with a corrected Form 1099-Misc. Income for the year 2014, which included his unauthorized uses of [the Lane Firm's] funds." Ds. Mot. to Dismiss App. 14.

breach of contract, breach of fiduciary duty, civil conversion, and unjust enrichment claims that Le Brocq made such unauthorized transfers. Additionally in the Illinois Action, Le Brocq brings fraud and IWPCA counts as counterclaims. Any of these issues could also require determinations of classification and amount of "compensation."

If this court were to answer questions surrounding the wire transactions, much of the proof adduced would likely be identical to that presented in the Illinois Action. *See Int'l Fid. Ins. Co.*, 665 F.3d at 678. As a result of these determinations, this court may affect outstanding, threshold issues in the Illinois Action. Doing so could trench on the authority of a sister court. *See Am. Home Mortg. Servicing*, 714 F.Supp.2d at 650-51. While Le Brocq argues that the temporal separation of events indicates the overlap may be less than absolute, the connection between critical factual and legal determinations in both cases indicates overlap may be substantial. *See Save Power*, 121 F.3d at 950. Accordingly, the court finds the issues presented in the Texas Action may substantially overlap with those in the Illinois Action.

C

Next, the court considers the appropriate course of action. Because "the issues might substantially overlap, [generally] the proper course of action [is] to transfer the case" to the first-filed court. *See Ameritox*, 2009 WL 305874, at *3. Other than transfer, the first-to-file rule allows a second-filed court to dismiss or stay a case. *See W. Gulf Maritime Ass'n*, 751 F.2d at 729 n.1. Unless circumstances require otherwise, the second-filed court (this court) transfers to the first-filed court (the Northern District of Illinois) to decide if and how this

case should proceed.

This court does not find any of the traditional circumstances that warrant a stay rather than a transfer. "A stay may, for example, be appropriate to permit the court of first filing to rule on a motion to transfer." *Id.*; *see also Am. Home Mortg. Servicing*, 714 F.Supp.2d at 651 (granting a stay instead of transfer in light of venue and jurisdictional defects). While Le Brocq argues that this court "should resolve this matter," P. Resp. 4, neither side raises venue or jurisdictional defects with the Northern District of Illinois. On the contrary, both defendants are clearly "at home" and already face suit in Illinois. *See Daimler AG v. Bauman*, ___ U.S. ___, 134 S.Ct. 746, 751 (2014) (holding that personal jurisdiction lies where defendant is "at home"). Therefore, transfer serves the interests of comity and economy better than a stay.

Defendants argue that the first-to-file rule mandates dismissal with prejudice. They do not offer any reason, however, why the court should dismiss rather than transfer, which is the typical course. *Cf. For the Gusto Motorsports, Inc. v. Lane*, 2017 WL 896898, at *1 (N.D. Tex. Mar. 7, 2017) (Lindsay, J.). In *For the Gusto Motorsports*, Judge Lindsay explained that the first- and second-filed cases presented "mirror image" parties, claims, and issues. *See id.* He therefore dismissed with prejudice, without trenching upon another court's authority. *See id.* at *2. By contrast, this case raises new claims not presently addressed in the Illinois Action. *See* Ds. Mot. to Dismiss Br. 8. Dismissal with prejudice may prevent the first-filed court from hearing a potentially viable claim that relates to pending claims and may "trench on a sister court's treatment of the issue." *See Cadle*, 174

F.3d at 604; *see also Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1161 (5th Cir. 1992) (holding that district court abused its discretion in dismissing second-filed claim with prejudice, where first-filed case would have no *res judicata* or collateral estoppel effect on the second-filed case). Even if the court dismissed without prejudice, Le Brocq would have to re-file the tax fraud claim in the Illinois Action. Ultimately, the Illinois court will go through the same legal analyses, regardless of transfer or dismissal and re-filing. Therefore, transfer serves the interests of comity and economy better than dismissal.

D

Defendants also appear to contend that, regardless of the first-to-file rule, Le Brocq's tax fraud claim should have been asserted as a counterclaim in the Illinois Action, has been waived in the Illinois Action, and should be dismissed here. While the court leaves a full counterclaim analysis for the Illinois court, it notes that the presence of compulsory counterclaims from the first-filed case in the second-filed case weighs in favor of applying the first-to-file rule. *See Your Preferred Printer*, 2012 WL 3016771, at *4 (citing *Ruckus Wireless, Inc. v. Harris Corp.*, 2012 WL 588792, at *3 (N.D. Cal. Feb. 22, 2012)).

Even assuming that defendants correctly assert that the tax fraud claim was compulsory in the Illinois Action under Rule 13(a), the court would have discretion to transfer, enjoin, stay, or dismiss the tax fraud claim without prejudice to allow re-pleading as counterclaims in the Illinois Action. *See id.* at *4 (citing 6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1418 (3d ed. 2001)). Potential statute of limitations and waiver issues could arise in the Illinois case, however, if

this court dismisses the claim outright, even without prejudice. Therefore, if the court decides the compulsory nature of Le Brocq's claim here as a counterclaim in Illinois, it risks "trench[ing] upon the authority of sister courts" and contributing to "piecemeal resolution of issues." *See Cadle*, 174 F.3d at 603. Thus the possibility of Rule 13(a) issues here further counsels transfer over dismissal. *See* 17 Moore's Federal Practice ¶ 111.13[1][o][ii][A] (3d ed. updated through 2016) ("If the first-filed action is vulnerable to dismissal on jurisdictional or statute of limitations grounds, the court in the second-filed action should stay it or transfer it, rather than outright dismiss it"); *see also Chavez v. Dole Food Co.*, 836 F.3d 205, 219, 221 (3d Cir. 2016) (citing Moore's and noting that a "court exercising its discretion under the first-filed rule should be careful not to cause unanticipated prejudice to the litigants before it . . . Even a dismissal without prejudice may create unanticipated problems").

Because the court is transferring on first-to-file grounds, it need only determine before transferring whether likelihood of substantial overlap exists. *See Your Preferred Printer*, 2012 WL 3016771, at *2. Accordingly, the court leaves to the first-filed court the determination whether substantial overlap actually exists, whether the tax fraud claims "arise[] out of the [same] transaction or occurrence" as current Illinois Action claims, and whether the case requires dismissal, consolidation, stay, or transfer back. Rule 13(a); *see Cadle*, 174 F.3d at 606; *see also Your Preferred Printer*, 2012 WL 3016771, at *2 (citing *W. Gulf Maritime Ass'n*, 751 F.2d at 730) (quoting *Mann*, 439 F.2d at 408). The court thus transfers the case to the Northern District of Illinois, Eastern Division in accordance with the "the values of economy, consistency, and comity." *Cadle*, 174 F.3d at 604.

III

Defendants also move for Rule 11 sanctions, but their motion is defective in at least two procedural respects. First, Rule 11(c)(2) provides that "[a] motion for sanctions must be made separately from any other motion." Defendants' motion is included as part of their motion to dismiss. Second, Rule 11(c)(2) provides that "[t]he motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." *See also* Rule 11 advisory committee's note (1993 Amendments) (discussing "safe harbor" provision of Rule 11(c)(2)). Defendants have not established that they served the motion and then waited 21 days after service to file it.

Even if their motion were not procedurally defective, the court would deny it on the merits. Accordingly, the motion for Rule 11 sanctions is denied.

* * *

For the reasons explained, the court grants defendants' alternative motion to transfer this action to the Northern District of Illinois, Eastern Division pursuant to the first-to-file rule. It denies without prejudice the motions to dismiss pursuant to Rules 12(b)(2), 12(b)(3), 12(b)(6), and 13(a), and it denies the motion for sanctions pursuant to Rule 11.

**SO ORDERED**.

April 6, 2017.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE